IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MELANIE L. NEWMAN | * | |
| v. | * | Civil Case No. JKB-13-1794 |
| COMMISSIONER, SOCIAL SECURITY | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' motions, and Ms. Newman's reply. ECF Nos. 17, 19, 22. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Ms. Newman applied for Disability Insurance Benefits on October 30, 2008, initially alleging a disability onset date of October 1, 2008. (Tr. 159-65). At her hearing, Ms. Newman amended her onset date to August 19, 2010, the date she sustained a concussion. (Tr. 21). Her claim was denied initially on April 1, 2009, and on reconsideration on November 16, 2010. (Tr. 102-05, 113-14). An Administrative Law Judge ("ALJ") held a hearing on January 12, 2012, (Tr. 42-99), and subsequently denied benefits to Ms. Newman in a written opinion dated January 12, 2012. (Tr. 18-41). The Appeals Council declined review, (Tr. 1-6), making the ALJ's

decision the final, reviewable decision of the agency.

The ALJ found that Ms. Newman suffered from the severe impairments of diabetes, obesity, bilateral carpal tunnel syndrome, cognitive disorder associated with depression, and status post bilateral knee arthroscopies. (Tr. 23). Despite these impairments, the ALJ determined that Ms. Newman retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to all posturals occasionally but no climbing of a rope, ladder or scaffold, frequent handling, fingering and feeling, and should avoid concentrated exposure to temperature extremes, odors, dusts, gases and poor ventilation. The claimant is limited to simple, unskilled work.

(Tr. 27). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Newman could perform. (Tr. 35). Accordingly, the ALJ determined that Ms. Newman was not disabled. (Tr. 36).

Ms. Newman disagrees. She raises six primary arguments in support of her appeal: (1) that the ALJ's physical RFC assessment is based on a faulty summary of the evidence; (2) that the ALJ assigned inadequate weight to the opinion of her treating physician, Dr. Diener; (3) that the ALJ erroneously made an adverse credibility assessment; (4) that the ALJ used opinions from specialists to substantiate findings relating to other medical fields; (5) that the ALJ erred in evaluating the opinions of Drs. Grattan and Anderson; and (6) that the ALJ's hypothetical to the VE was inadequate. Although Ms. Newman's arguments relating to her mental condition lack merit, I concur that the ALJ provided inadequate analysis relating to Ms. Newman's ability to stand and walk, which impacted the ALJ's consideration of Dr. Diener's opinion, her credibility analysis, and possibly the hypothetical she posed to the VE. As a result, I recommend that the case be remanded for further development of the record regarding Ms. Newman's ability to stand and walk for the length of time required to perform light work. In so recommending, I express

no opinion as to whether the ALJ's ultimate conclusion that Ms. Newman is not entitled to benefits is correct or incorrect.

Beginning with the unpersuasive arguments, the ALJ's consideration of Ms. Newman's mental condition, including the evaluation of the opinions from Drs. Grattan and Anderson, was supported by substantial evidence. (Tr. 32-33). Ms. Newman's medical record contains evidence that could be marshaled to support a finding of significant mental health impairments, and also contains evidence supporting the conclusion of the ALJ. My review of the ALJ's decision is limited to whether substantial evidence supports the decision and whether correct legal standards were applied. *See Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig,* 76 F.3d at 589 (4th Cir. 1996)). I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ appropriately supported her conclusion with substantial evidence, specifically the reports from consultative examiner Dr. Malik and treating physician Dr. Ansher, in addition to observations from the hearing relevant to the issue of credibility. (Tr. 32-33). Although Ms. Newman argues that Dr. Malik's report predated her concussion in August, 2010, Pl. Mot. 31, the same is true of Dr. Grattan's report, which Ms. Newman cites. (Tr. 510-515, 1059-62). Both Dr. Ansher and Dr. Anderson examined Ms. Newman after her head injury, and Dr. Ansher's report concluded that, just weeks after the injury, her post-concussion syndrome "had largely resolved."[1] (Tr. 851-56, 983). In light of the substantial evidence supporting the ALJ's assignment of weight, I find no error in the assessment of Ms. Newman's mental impairments.

Ms. Newman succeeds, however, in arguing that the ALJ failed to address significant evidence regarding her knee impairments and her resulting capacity to stand and walk. The

---

[1] Dr. Anderson noted that Ms. Newman "appeared to be suffering from Amnestic Disorder" of unknown etiology, which the psychologist attributed variously to "her numerous medical conditions" and her concussion. (Tr. 855-56).

3

determination is significant because, if Ms. Newman were found only to be capable of simple, unskilled sedentary work instead of light work, she would be entitled to a finding of "not disabled" under Medical-Vocational Rule 201.14. Under the RFC assessment determined by the ALJ, which does not restrict Ms. Newman's ability to stand or walk or include an option for sitting and standing at will, Ms. Newman is presumed to have the capacity to stand and/or walk for 6 hours in an 8 hour workday. SSR 83-10, 1983 WL 31251, at *5-6 ("[A] job is in this category when it involves a good deal of walking or standing — the primary difference between sedentary and most light jobs . . . [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Evidence important to considering Ms. Newman's capacity to stand and walk is contained in Exhibit 24F, which is comprised of records from her treating orthopedic physician, Dr. Sydney. (Tr. 1007-53). The ALJ's summary of Dr. Sydney's records does not appear to take into account many of the treatment notes, including the notes immediately surrounding the relevant time from the alleged onset date in August, 2010 through the date last insured in September, 2010. For example, the ALJ states that "no further notes were found in the file" between 2008 and April 2010 relating to Ms. Newman's left knee. (Tr. 30). However, in October, 2009, Dr. Snyder clearly noted "significant left knee pain with notable popping and catching" and found tenderness and decreased strength on examination. (Tr. 1023-24). The ALJ then stated that, "[b]y May 2010, she was said by her physician to be doing much better." (Tr. 30). In fact, on May 10, 2010, Dr. Snyder noted that Ms. Newman's "right knee is now giving her a lot of trouble" and documented findings on an MRI of an effusion, "diffuse patellar articular thinning and a residual horizontal tear." (Tr. 1022). The ALJ next says that "[t]here are no follow up notes involving her knees in the file after May 2010." (Tr. 30). However, on December 23, 2010, just shortly after the date last insured, Dr. Snyder's notes reflect that Ms. Newman's "left knee is giving her always

problem with pain deep in the knee . . . [t]he right knee again just constantly hurts and is deep within the knee." (Tr. 1020-21). On examination on December 23, 2010, Ms. Newman was noted to ambulate "with an antalgic gait" and had patellofemoral crepitation on the right knee. *Id.*

Ms. Newman's treating physician, Dr. Diener, opined in October of 2011 that she could "stand and walk for 3 hours in an 8 hour workday and sit for 5 hours in an 8 hour workday." (Tr. 884-85). The ALJ found this relatively moderate opinion to be entitled only to "little weight," suggesting that is "is inconsistent with Dr. Sydney's treatment notes." (Tr. 32). However, as noted above, the ALJ's summary of Dr. Sydney's treatment notes did not adequately address all of the relevant information, and further analysis is required to determine whether or not Dr. Diener's opinion accords with Dr. Sydney's notes. The only other information the ALJ cited to support the assignment of little weight to Dr. Diener's opinion is the treatment notes from Dr. Ansher, a neurologist, which evaluate Ms. Newman's neurological function and cannot be read to contradict Dr. Diener's opinion regarding her ability to engage in prolonged standing and walking. (Tr. 981-82). As a result, on the current record, I cannot find that the ALJ's assignment of weight to Dr. Diener's opinion, or RFC assessment for light work without sitting or standing restrictions, is supported by substantial evidence. I therefore recommend remand for the ALJ to fulfill her duty of explanation.

A more complete analysis of the records pertaining to Ms. Newman's ability to stand and/or walk may impact the ALJ's consideration of Ms. Newman's credibility, the nature of the RFC assessment, and the corresponding hypothetical presented to the VE. Accordingly, further analysis of Ms. Newman's arguments on those issues would be unproductive. On remand, I recommend that if changes are made to the RFC assessment, the ALJ should adjust the credibility analysis and the hypothetical accordingly.

5

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 17);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No.19); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  March 24, 2014                    /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge